JUDGE ROBERTSON
delivered the opinion oe the court:
Victor M. Flournoy, a childless citizen of Fayette county, Kentucky, and owner of a large and valuable homestead farm in that county, a plantation in Washington county, Mississippi, three tracts of land in Arkansas, and a large personal estate, died in the year 1865, leaving a widow and a brother and three sisters, his next of kin, and a holographic will, published the 10th of January, 1865, and containing substantially the following among other immaterial provisions:
1. A devise to his widow of sole “possession” of all his estate during her life, “ with the provisions and restrictions” afterwards prescribed.
2. A direction to pay all his debts by the sale of his bank stock or of any of his personal property in Ken-^ tucky, including his cash notes, and the sale, if necessary, •of a portion of his Fayette land.
3. A direction to his executrix to sell, after the close of the then existing civil war, his southern property, and of *521 the proceeds, “ retaining one half for her sole use and benefit; the other half to be divided in equal proportions between my brother and sisters, or, in case of the dea.th of any of them, to their children, in such pro rata division as the law makes in such cases; provided, however, that from that portion going to my sister, Betsy J. Johnson, the sum of ten thousand dollars, with its interest, due me from Captain Henry Johnson, is to be subtracted; also, from my brother’s portion, the sum of six thousand dollars loaned money, due me, with interest at eight per cent, per annum from this date until paid; also, from the portion' of my sister, Emily M. Ward, the amount of R. J. Ward’s note of about five thousand dollars, with the interest accrued thereon.”
4. So much as remains of what is now material is as follows: “ As it respects my Kentucky farm, negroes, stock, &c., on said farm, it is my will that so much of it as may remain after paying my debts, as above provided, my wife, Elizabeth J. Flournoy, is to have and hold for her sole use and benefit, so long as she shall live, and at her death shall have the right to will, in fee simple, one half of all my property left; the other half to be divided among my brother and sisters, or their children, as above described; provided, however, and I so distinctly understand it, that all the advantages, privileges, and’ benefits granted to my wife apply, and are to be employed by her, only so long as she remains a widow. If she marries, then, and in that case, it is my will that all my property is to be taken possession of by an administrator to be appointed by the court, and as soon as possible sold and divided amongst my brother and sisters, first paying to my widow, or whoever she may then be, the sum of five thousand dollars, as her portion of the same.”
*522 The widow, as executrix and devisee,^ claiming more than the testator’s brother and sisters would concede, brought this suit in equity against them for obtaining judicial interpretation of the will and umpirage as to the conflicting claims of the parties.
When the will was published all the testator’s sisters were widows in needy circumstances, as stated in the petition of the executrix. The slaves were all emancipated by the constitutional amendment for abolishing slavery. None of the Southern lands, except a small tract in Arkansas, have been sold; and the debts may be considered as paid without touching either the Fayette farm or the testator’s claims on his brother and deceased brothers-in-law. On the facts thus presented the circuit judge decided that the recited claims'on the testator’s brother and brothers-in-law constituted a portion of his estate as devised to all the parties to this friendly litigation; and, therefore, adjudge to the widow one half as legatee, and which half, adding interest, amounted to about fifteen thousand dollars; and as to the lands, decided that the interest of the brother and sisters was only a contingent remainder, defeasible by their death before division, and, in that event, vested in their children.
This appeal .requires a revision of the decree on both questions involved in it—
1. “ Cash notes,” mentioned as a portion of the property dedicated to the payment of debts, may not apply to the advances made to the testator’s brother and brothers-in-law, because it does not appear that the testator held the note of any'of them except R. J. Ward; nor are those advances included in the devise to the widow, because that devise is made subject to subsequent limitations; and those sums are afterwards expressly given to the *523 brother and widpws of the deceased brothers-in-law, and treated as advancements, to be thrown into hotchpot for equalizing among themselves the distributive portions of the testator’s brother and sisters. That fund cannot, therefore, be consistently considered assets for the payment of debts; nor, as it is expressly disposed of otherwise, can it be constructively included in the beneficial bequest to the widow ? But this court must treat it, as the testator evidently intended, as an advancement, to be subtracted from the portions of those to whose use it had been made, and whom, in their admitted destitution, he did not intend to harass by an useless and oppressive attempt at unnecessary coercion, even if the gift of the fund to them should subject his homestead to sale for debts, ahd, therefore, the widow is entitled to no portion of it as assets or otherwise; and, consequently, the decision of the circuit court on this subject was erroneous.
2. The testamentary disposition of the southern property does not vest in the widow a freehold interest, but merely gives to her the possession and curation, without title in re; and the title thus undisposed of by the will descended to the testator’s brother and sisters as his heirs, and only heirs. This interpretation, quite obvious on the face of that devise, is concluded by the significant fact that, as to the homestead farm, the devise to the widow is expressly a freehold title during her life or widowhood.
Then the entire fee in the southern lands being in his heirs when he died, we could not reasonably presume or admit that the testator intended that the subsequent death of any one of those heirs and devisees should translate his or her interest to children, not as their heirs, but as his devisees. It is much more reasonable to suppose that the contingent provision for the children was intended to apply only to those of any of his primary devisees who *524 might not survive him, and, therefore, could not take under the will, and whose children could not take representatively or otherwise, without such an express provision as the will makes on that contingency. The children, more remote and comparatively strangers, perhaps unknown and even unborn, only representatively called for the testator’s bounty. His first and controlling object was to provide for his brother and sisters, whom he regarded with peculiar affection, and, therefore, made the recipients of one half of his large estate in any event, and of the whole of it., except five thousand dollars, in the event of his wife’s marriage.
And this contingent devise of nearly all, to his brother and sisters, is without limitation, and does not even allude to their children, thus indicating his pervading purpose to devise the-fee absolutely to his brother and sisters living at his death, and his contemplation of their children as their representative devisees per stirpes; and even then,' only “ if the parent, not surviving him, should never acquire a vested interest in his estate, or become personal beneficiary under his will.
The spirit and context of the will point to this interpretation of its provisions; and we cannot imagine any consistent motive for inducing such a testator, animated by such fraternal affections as flow throughout his whole will, to limit the interest of his brother and sisters to their lives, and thereby cripple their means of comfortable support. Authorized by these considerations, and harmonizing with the testator’s general intent, the true construction of the second clause respecting his southern property, and providing for distribution annually among his brother and sisters, “ or, in case of the death of any of them, to their children,” seems to include the children of such only as should die before he died, and not such *525 as, by surviving him, would be vested with a fee. To extend that substitutional contingency .to the times of successive distributions, would be motiveless and incongruous, and not adaptable to the subtraction of advances to the brother and two of the sisters, to whom alone that provision fitly applies; and any other construction might frustrate the testator’s purpose qf securing to them, not their successors, comfortable maintenance by the proceeds of the southern estate dedicated especially to that provident purpose, which might be defeated by a contingent limitation, which might prevent prudent or necessary anticipation by their own sale or other acts.
It seems to us, therefore, that the fee in the southern estate, once vested by the testator’s death, is not defeasible on any prescribed or contemplated contingency, except the sale by the trustee, or for debts as authorized.
The same conclusion is even more certain and satisfactory as to the Fayette farm, which the third clause devised to the widow for life or widowhood, one half in remainder to the testator’s brother and sisters.
And the fact that, in the event of her marriage, the whole estate, in both Kentucky and the South, is devised to the testator’s brother and sisters, absolutely and without any contingent remainder to their children, proves his general and controlling intent in his whole will. If, on that contingency, the entire estate belongs to the brother and sisters absolutely without any limitation, why would the testator have limited the smaller estate South, in respect to which, as being smaller, the provident purpose of the will would make an absolute title more needful ? And why, in the event of his brother and sisters getting all, did he make no ulterior provision for their children ?
*526 This consideration alone should control the construction of the devise of the southern property, which should be construed with the clue furnished by the spirit of the whole will, and by the fact also that it was written by a man unskilled in the technics of the law.
Our allodial tenures, unlike the feudal technicality of the common law, is moulded by statute into a more simple and consistent system, which needs no scintilla juris to nourish the fee which must always exist somewhere else than in the clouds. In this case it is in the appellants, or nowhere; and, according to the testator’s evident purpose, it is not defeasible by any contingent remainder in children, and may be disposed of indefeasibly whenever and however the appellants may choose.
Wherefore, the judgment is reversed, and -the cause remanded for the substitution of this opinion for that of the. circuit court, so far as we have adjudged the rights of the parties.